UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00020-CRS-HBB

TAMMY B.[1]                                                    PLAINTIFF

VS.

MARTIN O'MALLEY, COMMISSIONER
SOCIAL SECURITY                                              DEFENDANT

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION

## I.    BACKGROUND

Before the Court is the Complaint (DN 1) of Tammy B. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff and Defendant have filed briefs (DN 12, 15).  Additionally, Plaintiff has filed a reply (DN 16).  For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.[2]

## II.    FINDINGS OF FACT

On March 2, 2021, Plaintiff protectively filed applications for Disabled Widow's Benefits and Supplemental Security Income (Tr. 18, 247, 49, 250-52, 253-57).  Plaintiff alleged that she became disabled on January 26, 2021, as a result of lupus, brain fog, tiredness, headaches, joint pain, hives, rashes, depression, and anxiety (Tr. 65, 74, 292).  In conjunction with her request for reconsideration, Plaintiff added the following conditions: spinal stenosis, slipped disc, low back

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Pursuant to General Order No. 2023-02 and 28 U.S. C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations.  By Order entered April 19, 2024 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

pain, severe arthritis, left shoulder throb, and severe numbness in the right arm (Tr. 85, 95).   The application was denied initially on August 26, 2021, and upon reconsideration on June 28, 2022 (Tr. 18, 83, 94, 105, 106).   On August 16, 2022, Plaintiff filed a written request for hearing (Tr. 18, 152-54).

On December 1, 2022, Administrative Law Judge Mallette Richey ("ALJ") conducted a telephone hearing due to the extraordinary circumstances created by the COVID-19 pandemic (Tr. 18, 39-40).   Plaintiff, with counsel, participated and testified by telephone (*Id.*).   Rachel McDaniel, an impartial vocational expert, participated and testified by telephone (*Id.*).

In a decision dated April 4, 2023, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 21-30).   As Plaintiff is the unmarried widow of the deceased insured worker and has attained the age of 50, she met the non-disability requirements for disability widow's benefits set forth in § 202(e) of the Social Security Act (Tr. 21).   The ALJ noted that the prescribed period ends on February 28, 2027 (*Id.*).   At the first step, the ALJ found although Plaintiff engaged in substantial gainful activity from January 2021 through March 2021, there has been a continuous 12-month period during which she did not engage in substantial gainful activity (*Id.*).   Therefore, the ALJ's remaining findings addressed the period Plaintiff did not engage in substantial gainful activity (*Id.*).

At the second step, the ALJ found that Plaintiff has the following severe impairments: depressive disorder, bipolar disorder, anxiety disorder, obsessive compulsive disorder, degenerative disc disease of the cervical and lumbar spine, fibromyalgia, and obesity (*Id.*).   The ALJ also considered Plaintiff's allegations of limitations from lupus with accompanying hives, rashes, brain fog, headaches, and COPD but found these impairments were either not severe or not

medically determinable (*Id.* at 21-22).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 22).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she can lift and carry twenty pounds occasionally, ten pounds frequently; she can stand and/or walk with normal breaks for six hours in an eight hour workday; she can sit for six hours with normal breaks in an eight hour workday; she can frequently climb ramps, stairs, ladders, ropes, and scaffolds; she can frequently crouch and crawl; she can have occasional exposure to vibrations, but should not work out in the sun; she can understand, remember, and carryout simple, one to three step instructions and tasks; she can maintain attention and concentration for two hour periods to complete an eight hour workday/forty hour workweek; she can frequently interact with coworkers and supervisors and occasionally with members of the general public; she can adapt to changes in the work setting, but should not work in a fast paced or quota driven jobs (Tr. 24).   Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where she considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 28-29).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 26, 2021, through the date of the decision (Tr. 29).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 245-46).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## III.    <u>CONCLUSIONS OF LAW</u>

### A.  <u>Standard of Review</u>

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

B. **The Commissioner's Sequential Evaluation Process**

The Social Security Act authorizes payment of Disabled Widow's Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 402(e) *et seq.* (Title II Disabled Widow's Benefits), 1381 *et seq.* (Title XVI Supplemental Security Income). The term "disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520(a), 416.920(a). In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

## C. **Finding No. 7**

Plaintiff raises two challenges to the ALJ's RFC findings set forth in Finding No. 7.   The RFC findings are the ALJ's ultimate determination of what Plaintiff can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The ALJ makes this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c).   Thus, in making the RFC determination the ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess Plaintiff's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a).

### *1. Opinion of Greg Lynch, Ph.D.*

#### a. **Arguments of the Parties**

Plaintiff asserts that the ALJ committed legal error when she purportedly found the opinion of Greg Lynch, Ph.D., persuasive yet she failed to either adopt *or* explain why she rejected three potentially work preclusive limitations in the opinion (DN 12 PageID # 1505, 1511-13; DN 13 PageID # 1517) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b); SSR 96-8p).   Defendant responds that there is no error because the ALJ incorporated all the limitations from Dr. Lynch's opinion into the RFC determination (DN 15 PageID # 1522, 1530-36).[3]   Plaintiff replies that a remand for further proceedings is required because the ALJ's found Dr. Lynch's opinion

---

3 Defendant also points out that the Sixth Circuit has made clear an Administrative Law Judge need not base the RFC finding directly on a physician's opinion even when she finds it persuasive (DN 15 PageID # 1522).

persuasive yet ignored three of the limitations in that opinion when she made the RFC determination (DN 16 PageID # 1546-49).

### b. Applicable Law

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 18, 247, 49, 250-52, 253-57). The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[5] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20

---

4 At the initial and reconsideration levels state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).
5 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).
6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations Administrative Law

Judges "may, but are not required to, explain how" they considered the three other factors in

determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).

The regulations direct that when evaluating supportability:

> The more relevant the objective medical evidence and supporting
> explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the
> more persuasive the medical opinions or prior administrative
> medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).   The regulations indicate that when evaluating

consistency:

> The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources
> and nonmedical sources in the claim, the more persuasive the
> medical opinion(s) or prior administrative medical finding(s) will
> be.

20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).   Thus, the supportability factor focuses on whether

the medical opinion is supported by the objective findings and explanations within Lynch's own

report.   By contrast, the consistency factor addresses whether Lynch's opinion is consistent with

the treatment records and nonmedical evidence in the record.

### c.  Discussion

On July 29, 2021, Greg Lynch, Ph.D., performed a consultative psychological examination

of Plaintiff (Tr. 657-61).   His diagnostic impression was: major depressive disorder, recurrent,

moderate; and generalized anxiety disorder (Tr. 660).   Dr. Lynch expressed the following medical

opinion:

8

[1] The claimant's capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks seems affected by the impairment with *slight limitations* noted.  [2] Her ability to tolerate stress and pressure of day-to-day employment seems affected by the impairment with *moderate limitations* noted.  [3] Her capacity to sustain attention and concentration towards performance of simple repetitive tasks seems affected by the impairment with *slight limitations* noted.  [4] Her capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting seems affected by the impairment with *moderate limitations* noted.

(*Id.*) (emphasis added).  Plaintiff argues the first, third, and fourth limitations in Dr. Lynch's opinion are not included in the ALJ's mental RFC finding (DN 12 PageID # 1512-13).  The undersigned disagrees.

Dr. Lynch's limitations are akin to some of the twenty mental function items, which are grouped within the four main categories of mental activities, that are supposed to be considered when an assessment of a claimant's mental RFC is made at step four.[7]  *See* Social Security Administration Program Operations Manual System Section DI 24510.060(B)(2)(b) and (B)(2)(c) ("SSA POMS: DI 24510.060"); Form SSA-4734-F4-SUP.  For example, Dr. Lynch's first limitation—capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks—is similar to the second mental function item—the ability to understand and remember very short and simple instructions—within the first main category "Understanding and Memory" and the first mental function item—the ability to carry out very short or simple instructions—within the second main category "Sustained Concentration and Persistence" (*see* Tr.

_____

7 The four categories of mental activities are: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation (*see* Tr. 70-71, 79-80, 91-92, 101-02).  *See* SSA POMS: DI 24510.060(B)(2)(b).  The twenty mental function items are rated on the following five-point rating scale: (1) not significantly limited; (2) moderately limited; (3) markedly limited; (4) no evidence of limitation in this category; and (5) not ratable on available evidence.  SSA POMS: DI 24510.060(B)(2)(c).

70, 71, 79, 80, 91, 92, 101, 102).   Form SSA-4734-F4-SUP.   Dr. Lynch's third limitation—capacity to sustain attention and concentration towards performance of simple repetitive tasks—is similar to the first mental function item—the ability to carry out very short and simple instructions—within the second main category entitled "Sustained Concentration and Persistence" (*see* Tr. 71, 80, 92, 102).   Form SSA-4734-F4-SUP.   Dr. Lynch's fourth limitation—capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting—is comparable to the last three the mental function items[8] within the third main category entitled "Social Interaction" and the first two mental function items within the fourth main category entitled "Adaptation"[9] (*see* Tr. 71, 80, 92, 102).   Form SSA-4734-F4-SUP.

Both non-examining state agency psychological consultants—Alexis Guerrero, M.D., and Dan K. Vandivier, Ph.D.—reviewed the evidence in the record, including Dr. Lynch's report, and found the four limitations expressed by Dr. Lynch's opinion persuasive (Tr. 68, 77, 89, 99).   At step three, Drs. Guerrero and Vandivier relied on the evidence of record—which included Dr. Lynch's report and opinion—to determine Plaintiff had a "moderate" degree of functional limitation in the four broad functional areas that are known as the "paragraph B" criteria (Tr. 67, 76, 88, 98).   At step four, Drs. Guerrero and Vandivier relied on the evidence of record—which included Dr. Lynch's report and opinion—when they rated the degree of limitation in each of the four main categories of mental activities (*see* Tr. 70-71, 79-80, 91-92, 101-02, 660).   *See* SSA POMS: DI 24510.060(B)(2)(b).   Drs. Guerrero and Vandivier then relied on those determinations

---

8  Specifically, the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.   Form SSA-4734-F4-SUP.

9  Specifically, the ability to respond appropriately to changes in the work setting; and the ability to be aware of normal hazards and take appropriate precautions.   Form SSA-4734-F4-SUP.

when they expressed their actual mental RFC findings: (1) claimant can understand and remember simple instructions and carry out such instructions for two-hour segments in an eight-hour work day; (2) claimant can relate with supervisors and co-workers in most routine work settings with some limitations in exposure with the general public; and (3) claimant can adapt to the changes in a non-complex work environment—and no more than mild to moderate stress level and work that is not fast paced or quota driven (Tr. 70-72, 79-81, 92-93, 102-03). *See* SSA POMS: DI 24510.060(B)(4). Thus, Drs. Guerrero and Vandivier adopted the limitations opined by Dr. Lynch in the context of making their more specific mental RFC findings.

The ALJ accurately summarized Dr. Lynch's report, discussed the four mental limitations he opined, and found his opinion persuasive (Tr. 25, 27).[10] In reaching her finding, the ALJ determined that Dr. Lynch's opinion was supported by his own "examination of [Plaintiff] in which he noted that [Plaintiff] had adequate ability to spell and complete tasks" (*Id.*). Further, the ALJ indicated that Dr. Lynch's opinion was consistent with Plaintiff's "lack of mental health treatment needed and presentation to her providers" (*Id.*). The ALJ's persuasiveness assessment

---

10 The ALJ's decision provided the following accurate summary of Dr. Lynch's report:

> During this examination, the claimant acknowledged that she quit her job in January 2021, because her lawyer said that she could not work since applying for disability (Ex. 5F/2). Even so, the examiner noted, during her tele visit, that the claimant had no difficulty in spelling the word "horse" backwards, completing the Digit Span backwards correctly, and remembering (Ex. 5F). Additionally, the examiner noted that the claimant's speech and her thought organization were normal despite her tearful affect (Ex. 5F). Further, she reported that while she attended counseling years ago, she acknowledged that she was not taking medications or receiving counseling currently (Ex. 5F/2). Moreover, during this appointment, the claimant acknowledged that she despite her poor sleep patterns and difficulty with housework, she could manage money and could perform activities such as watching TV, attending weekly church services and talking to her friends on Facebook (Ex. 5F/3).

(Tr. 25).

comports with applicable law because it explains how she considered the supportability and consistency factors in determining the persuasiveness of Dr. Lynch's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ accurately summarized the mental RFC findings of Drs. Guerrero and Vandivier and found them persuasive (Tr. 27). In reaching this finding, the ALJ explained:

> [T]his view was supported by their reviews of the medical evidence, which has shown that [Plaintiff] has maintained and an unremarkable mental presentation (Ex. 20F). Further, this view was consistent with her lack of mental health treatment.

(*Id.*). The ALJ's persuasiveness assessment comports with applicable law because it explains how she considered the supportability and consistency factors in determining the persuasiveness of the opinions of Drs. Guerrero and Vandivier. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

At step three, the ALJ considered the evidence of record—which included Dr. Lynch's opinion and the prior administrative medical findings of Drs. Guerrero and Vandivier—and found that Plaintiff had a "moderate" limitation in all four of the broad functional areas known as the "paragraph B" criteria (Tr. 23).[11] The undersigned concludes that the ALJ's findings at step three are consistent with adopting the four limitations expressed in Dr. Lynch's opinion. Moreover, the ALJ explained although the mental RFC determination reflects the degree of limitation found in the "paragraph B" mental function analysis, it requires a more detailed assessment of the areas of mental functioning (Tr. 23).

---

[11] The ALJ specifically cited Dr. Lynch's examination notes in support of two of the "paragraph B" criteria findings (Tr. 23).

At step four, the ALJ considered the evidence of record—which included Dr. Lynch's opinion and the prior administrative medical findings of Drs. Guerrero and Vandivier—and determined that Plaintiff has the following mental RFC:

> She can understand, remember, and carryout simple, one to three step instructions and tasks. She can maintain attention and concentration for two hour periods to complete an eight hour workday/forty hour workweek. She can frequently interact with coworkers and supervisors and occasionally with members of the general public. She can adapt to changes in the work setting, but should not work in a fast paced or quota driven jobs.

(Tr. 24). As explained above, Dr. Lynch's limitations are akin to some of the twenty mental function items grouped under the four main categories of mental activities that are supposed to be considered when an assessment of a claimant's mental RFC is made at step four. Thus, the record indicates that the ALJ adopted the limitations opined by Dr. Lynch in the context of making a more detailed assessment of the areas of mental functioning. While Plaintiff may not agree with the ALJ's mental RFC findings, they are supported by substantial evidence in the record and comport with applicable law. For this reason, the undersigned concludes that Plaintiff is not entitled to relief on this challenge to the ALJ's mental RFC determination.

### 2. *Plaintiff's Subjective Complaints*

#### a. **Arguments of the Parties**

Plaintiff contends that remand is required because the ALJ cited Social Security Ruling 12-2p ("SSR 12-2p") but failed to comply with it when evaluating Plaintiff's subjective complaints about her fibromyalgia (DN 12 PageID # 1505, 1510-11). Plaintiff asserts that once the ALJ determined she had the medically determinable impairment of fibromyalgia, the ALJ should have considered other factors that are relevant to assessing whether Plaintiff had greater limitations due

13

to fibromyalgia than those demonstrated by the objective medical findings of record (*Id.* at PageID # 1510-11). Plaintiff believes the ALJ erred in finding that Plaintiff's subjective complaints of pain related to fibromyalgia were not supported by the irrelevant objective medical findings of record (*Id.*) (citing Tr. 28). *See Arakas v. Comm'r Soc. Sec.*, 983 F.3d 83, 96 (4th Cir. 2020).

Defendant responds that the ALJ complied with SSR 12-2 when she determined that Plaintiff's fibromyalgia constitutes a medically determinable impairment at step two and considered that impairment in the remaining steps of the sequential evaluation process (DN 15 PageID # 1526-27) (citing *Markesha D. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4515, 2022 WL 1701915, at *3 (S.D. Ohio May 27, 2022), *report and recommendation adopted*, 2022 WL 4094511 (S.D. Ohio Sept. 7, 2022)). As the ALJ found the objective medical evidence did not substantiate Plaintiff's subjective statements about the extent of fibromyalgia symptoms, Defendant asserts that the ALJ complied with SSR 12-2p when she considered Plaintiff's daily activities, the conservative nature of the treatment (better sleep hygiene, gentle aerobic activity, physical therapy, lumbar steroid injections), and Plaintiff's short treatment history (*Id.* at PageID # 1527-29) (citing Tr. 23-28, 50-51, 451, 682, 683, 722-23, 727-28, 734-35, 809, 818, 820, 1133-34, 1140, 1141, 1145-47, 1159-61, 1165, 1167, 1179). Additionally, the ALJ included exertional, postural, and environmental limitations within the physical RFC findings to address Plaintiff's fibromyalgia (*Id.* at PageID #1529-30).

Plaintiff's reply asserts that SSR 12-2p contemplates that Administrative Law Judges will follow its guidelines throughout the sequential evaluation process (DN 16 PageID # 1543-44). Plaintiff suggests because there is no distinction between "objective medical evidence" and "unremarkable clinical findings on physical examination," the ALJ's consideration of both does

not cure her failure to follow SSR 12-2p (*Id.* at PageID # 1544).  Plaintiff suggests that the ALJ focused extensively on the alleged lack of objective evidence concerning the fibromyalgia and failed to conduct a robust analysis of Plaintiff's treatment history, daily activities, attempts to alleviate symptoms, and statements from other persons (*Id.* at PageID # 1545-46).

### b.  Applicable Law

On July 25, 2012, the Social Security Administration ("SSA") issued SSR 12-2p which provides guidance on how it "develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)."  SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).  Consequently, SSR 12–2p describes the criteria for establishing that a claimant has a medically determinable impairment of fibromyalgia, the sources of evidence the SSA may look to, and how a claimant's subjective claims of pain and functional limitations are evaluated.  *Id.* at *2-5.

Plaintiff's claim focuses on the ALJ's evaluation of her statements about symptoms and functional limitations caused by fibromyalgia.  In pertinent part, SSR 12-2p indicates that the SSA follows a two-step process set forth in its regulations—20 C.F.R. §§ 404.1520(b) and (c) and 416.920(b) and (c)—and in SSR 96-7p.  *Id.* at *5.  The two-step process is explained as follows:

> A. *First step of the symptom evaluation process*.  There must be medical signs and findings that show the person has [a medically determinable impairment(s)] which could reasonably be expected to produce the pain or other symptoms alleged.  [Fibromyalgia] which we determined to be [a medically determinable impairment] satisfies the first step of our two-step process for evaluating symptoms.
>
> B. *Second step of the symptom evaluation process*.  Once [a medically determinable impairment] is established, we then evaluate the intensity and persistence of the person's pain or any other

symptoms and determine the extent to which the symptoms limit the person's capacity for work.   If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.   As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.    We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

*Id.*   As the ALJ rendered her decision after March 28, 2016, she evaluated Plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of fibromyalgia under SSR 16-3p, not SSR 96-7p.[12]   *See Banks v. Comm'r of Soc. Sec.*, No. 2:18-CV-38, 2018 WL 6060449, at *5 (S.D. Ohio Nov. 20, 2018).   The ALJ complied with SSR 16-3p because she assessed the consistency of Plaintiff's statements, without reaching the question of Plaintiff's credibility or character for truthfulness (Tr. 24-28).[13]

### c.  Discussion

In addressing Plaintiff's claim, the ALJ's decision should be viewed holistically.   At step two of the sequential evaluation process, the ALJ found that Plaintiff's fibromyalgia is a severe medically determinable impairment (Tr. 21).   Thus, the ALJ determined that Plaintiff satisfied the

---

12 SSR 16-3p superseded SSR 96-7p, on March 28, 2016.   SSR 96-7p, 1996 WL 374186 (July 2, 1996).   The SSA subsequently republished SSR 16-3p with a revision explaining how the SSA applies the SSR "as it relates to the applicable date."   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).   The republished SSR 16-3p also "updated citations to reflect the revised regulations that became effective on March 27, 2017."   *Id.*

13 Under SSR 96-7p Administrative Law Judges were required to evaluate the credibility of a claimant's statements about pain or other symptoms and its functional effects.   *Banks v. Comm'r of Soc. Sec.*, No. 2:18-CV-38, 2018 WL 6060449, at *5 (S.D. Ohio Nov. 20, 2018); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).   By contrast, SSR 16-3p requires Administrative Law Judges to evaluate the consistency of a claimant's statements, without reaching the question of the claimant's credibility or character for truthfulness.   *Id.*; SSR 16-3p, 2017 WL 5180304, at *11.

first requirement of the two-component process for evaluating her symptoms. *See* SSR 12-2p, 2012 WL 3104869, at *5. The ALJ then moved to the second requirement which involved an evaluation of the intensity and persistence of Plaintiff's pain and other symptoms and a determination of the extent to which the pain and other symptoms limit Plaintiff's RFC. *Id.*

At step four, in the context of assessing Plaintiff's RFC, the ALJ accurately summarized Plaintiff's subjective statements about the type and severity of symptoms she experienced (Tr. 24-25). The ALJ determined that the objectively established medical condition—fibromyalgia— was not of such severity that it could reasonably be expected to produce the allegedly disabling pain and other symptoms (Tr. 25-28). *See Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Inasmuch as the reported pain and other symptoms suggested Plaintiff's fibromyalgia was of greater severity than could be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged by Plaintiff. *See* SSR 12-2p; SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff's level of daily activity is a factor that the ALJ appropriately considered in assessing the consistency of Plaintiff's statements concerning the intensity, persistence, and limiting effects of fibromyalgia. SSR 12-2p; SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). More specifically, at step three, albeit in the context of assessing the degree of limitation in the four areas of mental functioning, the ALJ observed that statements provided by Plaintiff and her son indicated she remained capable of shopping in stores, visiting a family member at the VA, attending church weekly, and driving (Tr. 23). These observations are equally pertinent to Plaintiff's level of daily activity due to fibromyalgia and the ALJ undoubtably

17

considered them in assessing the consistency of Plaintiff's statements concerning the intensity, persistence, and limiting effects of fibromyalgia.   This level of daily activity, while not extensive, is not consistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of fibromyalgia.

The ALJ also appropriately considered treatment, other than medication, that Plaintiff received in assessing the consistency of Plaintiff's statements concerning the intensity, persistence, and limiting effects of fibromyalgia (Tr. 25-28).   SSR 12-2p; SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).   For example, the ALJ pointed out that the treating source prescribed better sleep hygiene and gentle aerobic activity (Tr. 25).   Further, the ALJ observed that Plaintiff received a significant benefit from physical therapy (Tr. 26, 27-28).

Another factor that the ALJ appropriately considered is whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence about how the pain and other symptoms affect her.   SSR 12-2p; SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).   For example, the ALJ's decision noted at step two that with regard to fibromyalgia Plaintiff's own treating specialist—Charles Moore, M.D. of Norton Rheumatology—specifically "found that clinically there was no evidence of any underlying systemic involvement in regard to her pain complaints" (Tr. 21) (citing Tr. 835).   At step four, again in the context of assessing limitation to mental functioning, the ALJ noted that Plaintiff "fully acknowledged to her providers that she remains capable of performing concentrated tasks, such as long distance driving and maintaining her activities of daily care, despite her allegations to the contrary" (Tr. 28).   These observations are equally pertinent to the question of whether there are any inconsistencies in the evidence and the extent to which there are

18

any conflicts between Plaintiff's statements and the rest of the evidence concerning the intensity, persistence, and limiting effects of fibromyalgia.

The ALJ found from the medical record, Plaintiff's testimony at the hearing, and her son's reports that Plaintiff does not suffer pain and other symptoms to the extent she alleged (Tr. 25-28). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain and other symptoms. Since tolerance of pain and other symptoms is a highly individualized matter, the conclusion of the ALJ, who had the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly." *See Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (citing *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383 (6th Cir. 1978)). While Plaintiff may not agree with the ALJ's findings, they are supported by substantial evidence and fully comport with applicable law. Consequently, Plaintiff is not entitled to relief on this challenge to the ALJ's mental RFC determination.

### D. Finding No. 12

During the administrative hearing, the ALJ's second hypothetical question to the vocation expert included the mental and physical limitations set forth in the RFC determination (*compare* Finding No. 7 at Tr. 24 *with* Tr. 61-62). The vocational expert indicated that such an individual would not be able to perform any of Plaintiff's past relevant work but would be able to perform other work available in the national economy (Tr. 62). Specifically, the vocational expert testified that such an individual could perform work as: (1) a laundry folder which is unskilled light work with an Specific Vocational Preparation ("SVP") of 2, is listed as Occupational Code No. 369.687-018 in the Dictionary of Occupational Titles ("DOT"), and there approximately 60,000

19

such jobs in the United States economy; (2) an inspector and hand packager which is unskilled light work with an SVP of 2, is listed as Occupational Code No. 559.687-074 in the DOT, and there are approximately 98,000 such jobs in the United States economy; and (3) a marker which is unskilled light work with an SVP of 2, is listed as Occupation Code No. 209.587-034 in the DOT, and there are approximately 206,000 such jobs in the United States economy (*Id.*).   Based upon the vocational expert's testimony, the ALJ concluded that Plaintiff—considering her age, education, work experience, and RFC—can make a successful adjustment to other work that exists in significant numbers in the national economy (Finding No. 12 at Tr. 28-29).

### *1.  Arguments of the Parties*

Plaintiff contends that Finding No. 12 does not comport with SSR 00-4p and is not supported by substantial evidence (DN 12 PageID # 1506-09).   She explains that the ALJ's hypothetical question included the mental limitation "can understand, remember, and carry out simple *1 to 3-step* instructions and tasks" (*Id.* at PageID # 1506) (emphasis added).   Plaintiff asserts that "1 to 3-step" specifies the "instructions and tasks" must be "short" in length (*Id.* at PageID # 1507-09) (emphasis added).   She argues that "simple, *short* instructions and tasks" is consistent with the DOT's definition of level 1 reasoning but not level 2 reasoning (*Id.*) (emphasis added).   Plaintiff accuses the ALJ of failing to acknowledge and resolve this apparent conflict between the vocational expert's testimony—identifying the three occupations in response to the ALJ's hypothetical question—and information in the DOT indicating these occupations require level 2 reasoning (*Id.*) (citing *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021); *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019); SSR 00-4p).

Defendant responds, "Plaintiff's entire argument rests on her assumption that reasoning level two jobs, by their definition, are incompatible with a limitation to 'simple, one to three step instructions and tasks'" (DN 15 PageID # 1536).   Defendant suggests that Plaintiff has not cited any binding legal authority from the Sixth Circuit because its case law does not support her argument (*Id.* at PageID # 1537) (citing *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016); *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011)).   Further, Defendant points out that the Court has explicitly rejected an "argument that a limitation to simple, one to three step tasks is inconsistent with reasoning level two jobs," and instead concluded that such a limitation is consistent with the ability to perform jobs requiring level two reasoning (*Id.* at PageID # 1537-38) (citing *Padilla v. Saul*, No. 3:18-cv-580-CHB, 2020 WL 1651227, at *10 (W.D. Ky. Apr. 3, 2020)).   Defendant also contends this purported conflict could not have been apparent during the administrative hearing as Plaintiff's own attorney did not mention it nor did he ask the vocational expert a single question to clarify this alleged inconsistency (*Id.* at PageID # 1538).   Defendant asserts that the ALJ met her burden of inquiry under SSR 00-4p (*Id.* at PageID # 1538-39) (citing Tr. 63).

Plaintiff's reply acknowledges that "the Sixth Circuit has held that there is no conflict where a claimant is limited to simple work and yet found capable of performing reasoning level 2 occupations" (DN 16 PageID # 1541).   Plaintiff argues that the Sixth Circuit "has not addressed the issue before this Court – whether there is a conflict where a claimant is limited to short, simple instructions and yet found capable of performing reasoning level 2 occupations" (*Id.*).   Plaintiff distinguishes the circumstances in *Padilla* from this case by pointing out that the limitation here is simple, short instructions (*Id.*).   Plaintiff also cites dicta from a sister court recognizing that a

21

limitation to simple, short instructions would seem to limit a claimant to reasoning level 1 occupations (*Id.*) (citing *Rodriguez v. Comm'r of Soc. Sec.* No. 3:11-CV-398, 2012 WL 380275, at *4 n.4 (N.D. Ohio Feb. 6, 2012)).   For these reasons, Plaintiff encourages the Court to consider the logic in the *Lawrence* and *Buchwalter* cases which involve similar limitations (*Id.* at PageID # 1542).

### 2. Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a), 416.920(a)(4)(v) and (g), 416.966(a); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 684 (6th Cir. 1992); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and RFC coincide with all the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; *Born v. Sec'y of Health & Hum. Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Moon*, 923 F.2d at 1181.

When, as here, a claimant's age, education, previous work experience, and RFC do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. §§ 404.1566(e), 416.966(e); *Born*, 923 F.2d at 1174; *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 531, 535 (6th Cir. 1981).

For example, if the claimant suffers from exertional and non-exertional impairments the Grids may be used only as a framework in the decision-making process and the Commissioner must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. §§ 404.1569a(d), 416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Abbot v. Sullivan*, 905 F.2d 918, 926-927 (6th Cir. 1990); *Cole v. Sec'y of Health & Hum. Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kirk*, 667 F.2d at 528-29.   A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the national economy, *Bradford v. Sec'y, Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.   *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Social Security Ruling 00-4p imposes on the Administrative Law Judge an affirmative duty to ask the vocational expert whether there is a conflict between the vocational expert's testimony and information in the DOT.   If there appears to be a conflict, the Administrative Law Judge will elicit from the vocational expert an explanation for the conflict.   SSR 00-4p; *see O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020).   The Administrative Law Judge will then resolve the conflict by deciding whether the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than the DOT information.   SSR 00-4p; *see O'Neal*, 799 F. App'x at 317.   The Administrative Law Judge is "under no duty to 'conduct an independent investigation' into the vocational expert's testimony

to determine whether it was correct." *O'Neal*, 799 F. App'x at 317 (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)).

### 3. Discussion

Immediately below each occupation description in the DOT is a Definition Trailer that sets forth a series of abbreviations, words, and numbers that at first blush can be confusing. For example, the Definition Trailer for laundry folder (DOT # 369.687-018) reads "*GOE: 06.04.35 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 78.*"[14]

There are five components to the Definition Trailer. DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (Jan. 1. 2016). They are: "GOE" which means guide for occupational exploration; "STRENGTH" which means physical demands—strength rating; "GED" which means general education development; "SVP" which means specific vocational preparation; and "DLU" which means date of last update. The component most pertinent to Plaintiff's claim is "GED." It is composed of three separate divisions: "R" for reasoning development; "M" for mathematical development; and "L" for language development. *Id.*

Plaintiff's claim focuses on the "R" division within the "GED" component. Notably, R1 is the lowest level and R6 is the highest level on the reasoning development scale. *Id.* The R1 level definition reads:

> Apply commonsense understanding to carry out *simple one- or two-step* instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id.* (emphasis added). The R2 level definition is:

> Apply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions. Deal with problems

---

14 https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03B

> involving a few concrete variables in or from standardized situations.

*Id.* (emphasis added).    And the R3 level definition states:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.    Deal with problems involving several concrete variables in or from standardized situations.

*Id.*   The Definition Trailer for each of the three occupations at issue—laundry folder (DOT # 369.687-018), inspector/hand packager (DOT # 559.687-074), marker (DOT # 209.587-034)—indicates an R 2 level on the reasoning development scale.[15]

There is not an apparent conflict between Plaintiff's mental RFC which includes a limitation on the ability to "understand, remember, and carryout *simple, one to three step* instructions and tasks," and the three identified occupations with an R 2 level on the reasoning development scale (Tr. 61-62) (emphasis added).    Consequently, the ALJ did not err.

The reasoning in *Buckwalter v. Acting Comm'r of Soc. Sec*, 5 F.4th 1315, 1323 (11th Cir. 2021), undermines Plaintiff's argument.    The Eleventh Circuit explained that "the primary difference between levels one and two lies in the *length* of the instructions—not the complexity."[16] *Id.*   Accordingly, level 1 is limited to one- or two-step instructions, while level 2 is not limited in length.    *See Id.*   The *Buckwalter* court believed its interpretation was confirmed by the level 3 definition "which lifts the restriction on how complex the instructions can be—allowing for any 'instructions.'"    *Id.*   The Eleventh Circuit observed that the Fourth and Eighth Circuits "adopted

---

15  https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03B

16  In reaching this conclusion, the Eleventh Circuit pointed out that "Merriam-Webster defines 'simple' as 'readily understood or performed;' it defines 'uninvolved' as 'not involved,' meaning not 'marked by extreme and often needless or excessive complexity.'"    *See Buckwalter v. Acting Comm'r of Soc. Sec*, 5 F.4th 1315, 1323 (11th Cir. 2021) (citing *Simple*, *Uninvolved*, *Involved*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com.)).    Further, it noted that "simple" is an antonym for "involved."    *Id.*

a similar interpretation, reasoning that there was no apparent conflict in such a situation because 'detailed' indicates length rather than complexity, and 'uninvolved' also denotes a lack of complexity." *Id.* (citing *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019); *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010)). Here, the ALJ limited the length of instructions by indicating "1 to 3-step[s]" which exceeds R1's "one- or two-step" limitation (Tr. 61-62) (emphasis added). Moreover, the ALJ included "*simple*" in that limitation which is synonymous with "*uninvolved*." Therefore, the reasoning in *Buckwalter* supports a finding that the ALJ's mental RFC finding is consistent with the identified occupations that have an R 2 reasoning level.

Plaintiff's reliance on *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019) is equally unavailing. In *Lawrence* the Administrative Law Judge's mental RFC limited the plaintiff to "simple, routine repetitive tasks of unskilled work." *Id.* at 143. The Fourth Circuit's analysis distinguished Lawrence's circumstances from those of Thomas who had a mental RFC that limited her to "jobs involving '*short*, simple instructions[.]'" *Lawrence*, 941 F.3d at 143 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019) (emphasis added). The Fourth Circuit explained:

> Even assuming that "tasks" and "instructions" are synonymous, the key difference is that Thomas was limited to "short" instructions. "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.
>
> In contrast, the administrative law judge found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's residual functional capacity (as determined by the administrative law judge) and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few . . . variables." DOT, App. C, 1991 WL 688702.

> To begin with, detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." *Moore v. Astrue,* 623 F.3d 599, 604 (8th Cir. 2010) (citing *Webster's Third New Int'l Dictionary* 1191, 2499 (2002)). Finally, "routine" and "repetitive" tasks may involve a few variables, just as driving directions may vary if a road is closed.
>
> Thus, while there was an apparent conflict in Thomas, there is none here.

*Lawrence*, 941 F.3d at 143 (quoting DOT, App. C, 1991 WL 688702). The Fourth Circuit noted, "in finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning," it was in line with other circuits who have considered the issue. *Id.* at 144 n.8.

In *Joyce v. Comm'r of Soc. Sec.*, the Administrative Law Judge's hypothetical question indicated that the claimant was "limited to work that 'involve[s] simple, *one-, two-, three-step instructions*[.]'" 662 F. App'x 430, 435 (6th Cir. 2016) (emphasis added). The vocational expert responded by identifying "cashier" and "ticket seller" occupations. But the DOT indicated both occupations require an R 3 reasoning level. *Id.* The Sixth Circuit held that the Administrative Law Judge procedurally erred because she failed to ask whether the vocational expert's testimony "'conflicts with the information provided in the DOT' and to resolve any 'apparent conflicts.'" *Id.* at 435-36 (citing SSR 00-4p). The *Joyce* court then addressed the issue of whether the procedural error required a remand. *Id.* In doing so, the Sixth Circuit recognized that in *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011), the court "declined to recognize a *per se* inconsistency between jobs requiring reasoning levels of two or three and a

limitation to simple work." *Joyce*, 662 F. App'x at 436.    The *Joyce* court next observed that it went even further in *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014), "holding that a discrepancy between a simple-tasks limitation and the DOT reasoning levels 'is not the type of actual or apparent conflict that necessitates a resolution under SSR 00-4p.'" *Joyce*, 662 F. App'x at 436.    But the Sixth Circuit in *Joyce* rejected *Winslow*'s bright-line rule, leaving open the possibility that an Administrative Law Judge "might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning levels and a simple-tasks limitation." *Id.*[17] *Joyce* at best suggests that the limitation to "*simple, one-, two-, three-step instructions*" may be consistent with occupations in the DOT that have an R 3 level of reasoning.

Notably, the court in *Joyce* observed that SSR 00-4p imposed on Administrative Law Judges an affirmative duty to ask vocational experts if the testimony provided "'conflicts with the information provided in the DOT'" and to resolve any "'apparent conflicts.'" *Id.* at 435.    The Sixth Circuit then commented, "[i]n this circuit, an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Id.* at 435.    Under the Sixth Circuit's rule, in this case the ALJ satisfied her duty to inquire—under SSR 00-4p—because she asked the vocational expert if her "testimony has been consistent with the DOT and the SCO" and the vocational expert provided an affirmative response (Tr. 63).    *Id.*

Moving on to *Padilla v. Saul*, where the Administrative Law Judge's hypothetical question included the limitation "simple, routine, 1-3 step tasks[.]"    No. 3:18-CV-580-CHB, 2020 WL

---

17 The Sixth Circuit, in *Joyce*, went on to find the Administrative Law Judge's procedural error was harmless considering Joyce did not argue that he was incapable of performing the identified occupations, he earned a GED, he admitted being able to count change, he worked as a gas station attended for 16 months after his claimed disability period, and he performed work during the claimed disability period that the DOT classified as "semiskilled." *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 437 (6th Cir. 2016).    Accordingly, the court in *Joyce* concluded that substantial evidence supported the Administrative Law Judge's finding that Joyce can perform the work of a cashier or ticket seller which the DOT classified as "unskilled" occupations.    *Id.*

1651227 (W.D. Ky. Apr. 3, 2020).   In response to this hypothetical question, the vocational expert identified these occupations: laundry worker, an inspector, and a trimmer/cutter.   *Id.* at *3. Before this Court, Padilla argued that a person limited to simple, routine, 1-3 step tasks is precluded from these occupations because the DOT specifies, they have an R2 reasoning level.   *Id.* at *9.[18] This Court observed that Padilla's objection "focuses only on the ability to carry out 'detailed' instructions and fails to appreciate the important qualifier to level two reasoning: that such directions are also 'uninvolved.'"   *Id.* (citations omitted).   This Court pointed out that during Padilla's hearing, the vocational expert testified that he was not precluded from work requiring detailed but uninvolved instructions.   *Id.*   The Court commented, "[t]he weight of authority holds that a person who can perform routine and unskilled tasks can (at a minimum) perform an occupation with a reasoning level of two."   *Id.* at *10 (citing *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (determining that an occupation that requires level three reasoning was not inconsistent with claimant's ability to follow simple, concrete instructions); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (concluding that "level-two reasoning appears more consistent with" the claimant's ability to perform "simple and routine work tasks"); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine[,] and repetitive.").   Under the facts of Padilla's case, this Court held that the Administrative Law Judge's "finding that Plaintiff could perform *simple one to three step* tasks is consistent with the ability to perform jobs requiring *level two reasoning*,

---

18  The Court noted that Plaintiff waived the issue by failing to cross examine the vocational expert on the topic when she had the opportunity to do so.   *Padilla v. Saul*, No. 3:18-CV-580-CHB, 2020 WL 1651227, at *9 (W.D. Ky. Apr. 3, 2020).

and the ALJ did not err by relying on the vocational expert's testimony that [Padilla] could perform such jobs." *Id.* (emphasis added).

The circumstances here are slightly distinguishable from those in *Padilla*, as the vocational expert's testimony did not address Plaintiff's ability to perform work requiring detailed but uninvolved instructions.    Notwithstanding, considering the circumstances here along with reasoning in *Joyce, Buckwalter, Lawrence*, and *Padilla,* the undersigned concludes that the ALJ did not err.    There is no apparent conflict between the occupations identified by the vocational expert—in response to the ALJ's hypothetical question that included the limitation simple *1 to 3-step* instructions and tasks—and information in the DOT which indicates the occupations have an R 2 reasoning level.    Additionally, the ALJ satisfied her duty to inquire—under SSR 00-4p—by asking the vocational expert if her "testimony has been consistent with the DOT and the SCO" and receiving an affirmative response (Tr. 63).    Consequently, Plaintiff is not entitled to relief on her challenge to Finding No. 12.

## IV.    CONCLUSION

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ."    *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).    Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.    42 U.S.C. § 405(g). Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.    *Id.*    After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and

correctly followed the applicable law.    Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## V.    <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law.    As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

January 10, 2025

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

## VI.    <u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.    Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.    If a party has objections, such objections must be timely filed, or further appeal is waived.    *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

January 10, 2025

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

31